# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION OF CHATTANOOGA

Stephen Cahill, *et al.,* individually and on behalf of all others similarly situated,

     Plaintiffs,

v.

Memorial Heart Institute, LLC, d/b/a The Chattanooga Heart Institute,

     Defendant

Case No. 1:23-cv-00168-CLC-CHS

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASSES, APPROVAL OF NOTICE PROGRAM AND SCHEDULING OF A <u>FINAL APPROVAL HEARING</u>

1

# I.       INTRODUCTION

Plaintiffs Stephen Cahill, Sheila Edwards, Sidney Jackson, Gisele Reed Allen, Jeff Bryden, and Elyn Painter ("Plaintiffs"), individually and on behalf of the proposed Settlement Class, seek preliminary approval of a proposed Settlement[1] of claims against Defendant, Memorial Heart Institute, LLC d/b/a The Chattanooga Heart Institute (referred to herein as "Memorial" or "Defendant") (collectively, the "Parties"). The Parties reached a proposed Settlement that, if approved by the Court, will resolve Plaintiffs' and Settlement Class Members' claims against Memorial arising from the Data Incident at issue in this Action. In support of this Memorandum, Plaintiffs submit the Settlement Agreement ("SA") as **Exhibit 1** and a Joint Declaration of Class Counsel as **Exhibit 2**.

This Action arises from a Data Incident occurring between March 8, 2023, and March 16, 2023, that Plaintiffs allege compromised the security of their personally identifiable information and protected health information (collectively "Private Information"). After extensive litigation, followed by arm's-length negotiations guided by an experienced data breach mediator, the Parties negotiated a Settlement providing significant relief for Plaintiffs and the Settlement Class Members they seek to represent. Joint Declaration of Class Counsel ("Joint Decl.") ¶ 5-7. The Settlement addresses the reasonable objectives of the Action while eliminating the uncertainties and risks that Settlement Class Members would face through continued litigation. Moreover, the Settlement is both fair and reasonable. Accordingly, Plaintiffs request that the Court (1) preliminarily approve the proposed Settlement, (2) certify the Settlement Class for settlement purposes only, (3) appoint Plaintiffs as Class Representatives, (4) appoint Plaintiffs' counsel as

---

[1] All capitalized terms used herein shall have the same meaning as those used in the Settlement Agreement, attached hereto as **Ex. 1**.

Class Counsel, (5) order that Class Notice be distributed to the Settlement Class pursuant to the Settlement Agreement, and (6) schedule a Final Approval Hearing.

## II.        SUMMARY OF THE LITIGATION

After discovering the Data Incident, Defendant sent notice of the breach to approximately 460,000 individuals' whose Private Information was accessed or potentially accessed, with a subset of approximately 287,000 individuals for whom this Private Information included their Social Security numbers. SA ¶ 4. The entire population of impacted individuals is referred to as the Total Class or Settlement Class Members, with the subset of 287,000 Settlement Class Members whose Social Security numbers were potentially affected referred to as the Social Security Class or SSN Class. *Id.* ¶¶ 71, 75, 78. Plaintiff Stephen Cahill filed his Complaint on August 7, 2023, seeking to recover damages on behalf of himself and a putative class of similarly situated individuals. Joint Decl. ¶ 13. Soon after Plaintiff Cahill's complaint was filed, Plaintiffs Sheila Edwards, Sidney Jackson, Gisele Reed Allen, Jeff Bryden, and Elyn Painter filed complaints raising similar allegations against Defendant. *Id.* Following consolidation of the related cases, on November 2, 2023, Plaintiffs Edwards, Jackson, Allen, Bryden, and Painter along with Plaintiff Christopher Cordes filed a Consolidated Amended Complaint ("CAC"), which is referred to herein and in the Settlement Agreement as the CAC. *Id.*

Defendant filed a Motion to Dismiss the CAC, which the Parties fully briefed. *See* ECF Nos. 37-40. On September 26, 2024, the Court granted in part and denied in part Defendant's Motion to Dismiss. ECF Nos. 40, 41. On November 7, 2024, Defendant filed its Answer to the CAC. ECF No. 43. The Parties then met and conferred, and a Scheduling Order was entered, followed by the commencement of, and engagement in, months of formal discovery, including

3

large-scale document production, the taking and defending of numerous depositions, and initial preparations for expert discovery. Joint Decl. ¶ 14.

While discovery was ongoing, the Parties initiated settlement discussions and scheduled a virtual mediation with an experienced data breach mediator Jill Sperber ("Ms. Sperber") from Judicate West Alternative Dispute Resolution. *Id.* ¶ 15. In advance of the mediation, the Parties exchanged comprehensive mediation statements. Through formal discovery, the Parties had already exchanged information related to the nature and cause of the Data Incident, the number and geographic location of individuals impacted, the specific type of information accessed, and the injuries and damages alleged by Plaintiffs. *Id.*

Ms. Sperber conducted a full-day virtual mediation on September 9, 2025. Ultimately, as detailed below, the Parties reached an agreement in principle to the material terms of a class-wide settlement, which consisted of a hybrid common fund and claims made settlement. *Id.* ¶ 16. That agreement was contingent upon, and subsequently received, approval from the Defendant's insurance carriers following the mediation. *Id.* The Parties now seek preliminary approval of the Settlement Agreement presented to this Court.

## III.     SUMMARY OF SETTLEMENT

The Settlement negotiated on behalf of the Settlement Class provides for a Settlement Fund of up to $3,750,000. SA ¶ 73. The Settlement Fund shall be used by the Settlement Administrator to pay the following: (i) Costs of Settlement Administration; (ii) Taxes and Tax-Related Expenses; (iii) Service Awards; (iv) Fee Award and Costs; and (v) the Settlement Benefits elected by Settlement Class Members who submit valid and timely Settlement Claims pursuant to the terms of this Settlement. *Id.* ¶¶ 81-86.

### A.     THE SETTLEMENT CLASS

The Settlement is separated into two Classes, the Total Class and the SSN Class. The "**Total Class**" is defined as "all living individuals in the United States whose Private Information was identified as accessed or accessible in the Data Incident." SA ¶ 78. The Total Class excludes: (a) the judge(s) to whom the Action is assigned and any member of those judge's staffs or immediate family members; (b) counsel for the Parties, any member of their respective staffs who worked directly on the Action, and any member of their immediate families; (c) any governmental entity; (d) any entity in which any of the Defendant has a controlling interest; (e) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, legal representatives, heirs, successors, or assigns; and (f) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id*. The Total Class consists of approximately 460,000 individuals and includes all members of the SSN Class. *Id*.

The "**SSN Class**" is defined as "all living individuals in the United States who are members of the Total Class and whose Social Security number was identified as accessed or accessible during the Data Incident." *Id*. ¶ 75. It excludes the following: (a) the judge(s) to whom the Action is assigned and any member of those judge's staffs or immediate family members; (b) counsel for the Parties, any member of their respective staffs who worked directly on the Action, and any member of their immediate families; (c) any governmental entity; (d) any entity in which any of the Defendant has a controlling interest; (e) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, legal representatives, heirs, successors, or assigns; and (f) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id*. The SSN Class consists of approximately 287,000 individuals. For the avoidance of doubt, all SSN Class Members are also members of the Total Class. *Id*.

### B.    SETTLEMENT BENEFITS

## 1.  Settlement Funds

The Settlement provides significant relief to all participating Settlement Class Members. The Settlement creates two funds: the SSN Class Fund, which is a non-reversionary common fund for the benefit of the individuals whose Social Security numbers were potentially compromised; and the Total Class Fund, which is a claims made fund that benefits the entire Settlement Class, including but not limited to the SSN Class. *See* SA ¶¶ 81-86.

First, Defendant shall pay $2,000,000 into the non-reversionary SSN Class Fund. Following the payment of the Service Awards, Fee Award and Costs, fifty-three percent (53%) of the Settlement Administration Costs, and CAFA notice, the SSN Security Fund will provide SSN Class Members with the ability to seek a Cash Payment that will be increased or decreased on a *pro rata* basis. SA ¶¶ 97-98.

Second, Defendant agrees to pay a claims-made settlement fund of up to $1,750,000 for the Total Class Fund. The Total Class Fund will be used to pay claims for Documented Losses up to $5,500 per Settlement Class Member and two years of medical monitoring from CyEx on a claims-made basis. *Id.* ¶¶ 88-93. Defendant's obligation under the claims-made Total Class Fund shall not exceed $1,750,000. *Id.* ¶ 88. Settlement Class Members will have ninety days from the Notice Deadline to submit a claim. *Id.* ¶ 24.

## 2.  Notice Program

Under the terms of the Settlement Agreement, the Parties agreed that Kroll Settlement Administration ("Kroll") should serve as the Settlement Administrator, subject to Court approval. SA ¶ 68. Should the Court approve, Kroll will administer the Notice Program under the terms identified in Sections VI through VII of the Settlement Agreement.

Within ten (10) days of the entry of the Preliminary Approval Order, if entered, Defendant

6

will provide Kroll with a list of Settlement Class Members. SA ¶ 105. Kroll will establish a Settlement Website to provide Settlement Class Members with all relevant information and documents, including the Settlement Agreement, Claims and Notice Forms, and Court orders. *Id.* ¶ 109. Kroll will also send Postcard Notices to each Settlement Class Member within thirty days of the Preliminary Approval Order. *See id.* ¶ 106; Ex. 1. The Postcard Notice shall include among other information: a QR code that links directly to the Claim Forms on the Settlement Website, a description of the material terms of the Settlement; how to submit Claim Forms; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class Members to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Settlement Agreement and other related documents and information. SA ¶ 107.

Should any Settlement Class Member wish to opt out of the Settlement, they must postmark their Request for Exclusion to Kroll at the address set forth in the Notice postmarked no later than 60 days following commencement of Notice ("Opt-Out Period"). *Id.* ¶¶ 54, 110. Any Request for Exclusion must be personally signed by the Settlement Class Member and contain the requestor's name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. *Id.* ¶110. Any Settlement Class Members who do not submit a timely and valid Request for Exclusion shall be bound by the terms of the Settlement Agreement even if that Settlement Class Member does not submit a Valid Claim. *Id.*

Any Settlement Class Member seeking to object to the Settlement must mail a letter to Settlement Class Counsel, Kroll, and Counsel for Memorial, postmarked no later than sixty days from the Notice Commencement Date. *Id.* ¶¶ 53, 111. To state a valid objection to the Settlement,

7

a Settlement Class Member must set forth all of the following information in writing: (a) the name of the proceedings; (b) the objector's full name, mailing address, telephone number, and email address (if any); (c) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; (e) a statement of whether the objector and/or his/her attorney(s) intend to appear at the Final Approval Hearing; (f) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; (g) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (h) the number of times the objector, the objector's counsel and/or counsel's law firm has objected to a class action settlement within the five (5) years preceding the date of the objection, the caption of each case in which the objection was made, and a copy of any orders related to or ruling upon the prior objections that were issued by the trial and appellate courts in each listed case; and (i) the objector's signature (an attorney's signature is not sufficient). *Id.* ¶ 112. Class Counsel and/or Defendant's counsel may conduct limited discovery on any objector or objector's counsel. *Id.*

### 3.     Attorneys' Fees, Costs, and Service Awards

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorneys' fees of up to one-third of the Settlement Fund. *Id.* ¶ 137. For the SSN Class Fund, Class Counsel may apply to the Court for an award of attorneys' fees of up to $666,666.67 and proportional expenses (53% of total expenses) not to exceed $26,500. *Id.* For the Total Class Fund, Class Counsel may apply to the Court for an award of attorneys' fees of up to $583,333.33 and proportional expenses (47% of total expenses) not to exceed $23,500. *Id.* The combined request

for attorney's fees shall not exceed $1.25 Million and combined costs shall not exceed $50,000. *Id.* The attorneys' fees and expense awards approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Class Counsel within ten (10) days of the Effective Date. *Id.*

Class Counsel may also petition the Court to appoint Plaintiffs as Class Representatives and award Service Awards in the amount of $4,500 each for their time and effort in the Action. *Id.* ¶ 29. Any approved Service Awards will be dedicated from the SSN Class Fund. *Id.* ¶ 136. The Attorneys' Fees and expense awards and Service Awards were not negotiated until after other material settlement terms were agreed upon. Decl. ¶ 32.

### 4. Releases

In exchange for these benefits, all Settlement Class Members who do not timely and validly opt out shall fully and finally release Defendant and the other Released Parties from any and all past, present, and future claims and causes of action related to the Data Incident as fully detailed in the Section XI of the Settlement Agreement.

## IV. ARGUMENT

Federal Rule of Civil Procedure 23(e) requires court approval of a proposed class action settlement which binds class members. Before approval may be granted, the Court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This Court has discretion in determining the fairness of the proposed plan. *Laskey v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.*, 638 F.2d 954, 957 (6th Cir.1981). While the Supreme Court has instructed that a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011), in the context of a proposed settlement class, the requisite "rigorous analysis" of the record and

consideration of the merits must be focused on and limited to the question whether Rule 23's requirements have been established. *In re Whirlpool Corp. Front- Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013).

Federal Rule of Civil Procedure 23(e)(1)(B)(ii) directs a court at the preliminary approval stage to determine whether it "will likely be able to ... certify the class for purposes of judgment on the proposal." *Jones v. Varsity Brands, LLC*, 2024 WL 3049464, at *5 (W.D. Tenn. June 18, 2024). To obtain class certification, a party must demonstrate that: "(1) the proposed class and class representatives meet all of the requirements of Rule 23(a); (2) the case fits into one of the categories of Rule 23(b); and (3) class counsel meets the requirements of Rule 23(g)." *Id.* If the Court determines that class certification is likely, it may conditionally certify the class pending approval of the settlement. *Id.*

Federal courts strongly favor and encourage settlements, particularly in class actions where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). Though "[c]ourts apply a degree of scrutiny sufficient to avoid 'rubber-stamp[ing]' a proposed settlement agreement," Court must still be "mindful of the substantial judicial processes that remain to test the assumptions and representations upon which the [proposed settlement agreement] are premised." *Lott v. Louisville Metro Gov't*, No. 3:19-cv-271, 2023 WL 2562407, at *1 (W.D. Ky. Mar. 17, 2023) (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001)); *see also Moeller v. Wk. Publications, Inc.*, 649 F. Supp. 3d 530, 537 (E.D. Mich. 2023) ("The question at the preliminary-approval stage is 'simply whether the settlement is fair enough' to begin the class-

10

notice process.") (citing *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)).

### A. The Settlement is Fair, Reasonable, and Adequate

Under Rule 23(e)(2), the Court must determine whether the proposed settlement is "fair, reasonable, and adequate" after considering the following four factors:"

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
   (i) the costs, risks, and delay of trial and appeal;
   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
   (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

*In re Family Dollar Stores, Inc., Pest Infestation Litig.*, 2023 WL 7112838, at *10 (W.D. Tenn. Oct. 27, 2023) (quoting Fed. R. Civ. P. 23(e)(2)(A)-(D)). In addition to the Rule 23 factors, the Court considers: (1) the risk of fraud or collision; (2) the complexity, expense, and likely duration of the litigation; (3) the amount discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (5) the reaction of absent class members; and (7) the public interest. *Id.*

Under the strictures of Rule 23(e) and its interpreting case law in the Sixth Circuit, the Court should hold that the Settlement Agreement is fair, reasonable, and adequate, and should grant preliminary approval.

### 1. The Class is Adequately Represented

Rule 23(a)(4) requires that Plaintiffs and Class Counsel fairly and adequately protect the interests of the Class. The inquiry into adequate representation is "essential to due process, because

a final judgment in a class action is binding on all class members." *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). The Sixth Circuit has "'articulated two criteria for determining adequacy of representation: (1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Ware v. CKF Enter., Inc.*, No. 5:19-183, 2020 WL 2441415, at *9 (E.D. Ky. May 12, 2020) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)). In determining whether Plaintiffs adequately represent the class, the inquiry is whether they "possess the same interest and suffer the same injury as class members." *Jones*, 2024 WL 3049464, at *6 (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007)) (internal quotation marks omitted). Put differently, Plaintiffs and Class Members must not have "interests that are [ ] antagonistic to one another." *Id.*

As for the first prong, each of the Plaintiffs are members of both the Total Class and the SSN Class and do not possess any interests antagonistic to the Settlement Class. They allege that their personal information was compromised as a result of the same Data Incident. Indeed, Plaintiffs' claims coincide identically with the claims of the Class and each desire the same outcome of this litigation. Plaintiffs have vigorously prosecuted these cases for the benefit of all Class Members and participated in the litigation, reviewed pleadings, and participated in extensive discovery and in-person depositions.

Second, Class Counsel has adequately represented the Settlement Class Members. Rule 23(g) sets forth several criteria for determining the adequacy of Class Counsel. Under Rule 23(g), courts consider (1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the

resources that counsel will commit to representing the class. Here, Class Counsel have investigated this matter thoroughly, including by researching the factual background and potential claims and defenses. Joint Decl. ¶ 4. Class Counsel have significant experience in data breach litigation across the country. Joint Decl. ¶ 22. Class Counsel's significant experience has afforded them and their team's deep knowledge of the claims and defense common in data breach litigation. *Id*. And Class Counsel has ample resources to prosecute this action and never relies on outside funding.

Thus, because Plaintiffs and Class Counsel possess substantial experience and track records in similar litigation and have vigorously prosecuted the case, the adequacy requirement is satisfied.

### 2.      The Settlement is the Product of Arms'-Length Negotiations

Under Federal Rule of Civil Procedure 23(e)(2)(B), the Court considers whether the proposed settlement is the product of an arms'-length negotiation. *See Bert v. AK Steel Corp*., No. 02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) (holding that "participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"); *Peck v. Air Evac EMS, Inc.*, No. 5:18-cv-615-DCR, 2019 WL 3219150, at *6 (E.D. Ky. July 17, 2019) (same, with respect to using "an experienced" private mediator).

As detailed above, the material terms of the Settlement Agreement were reached after extensive discovery and a full day of arms'-length negotiations guided by experienced data breach mediator Ms. Sperber. SA ¶¶ 10, 11. The mediation and subsequent negotiations resulting in a unique hybrid common fund-claims made resolution, were undoubtedly hard fought and absent of any collusion. This factor weighs in favor of preliminary approval.

### 3.      The Settlement Terms Represent a Favorable Compromise, Balancing Likelihood of Success with Attendant Risks.

13

Under Federal Rule of Civil Procedure 23(e)(2)(B), the Court considers whether the proposed settlement is the product of an arms'-length negotiation. *See Bert v. AK Steel Corp*., No. 02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) (holding that "participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"); *Peck v. Air Evac EMS, Inc.*, No. 5:18-cv-615-DCR, 2019 WL 3219150, at *6 (E.D. Ky. July 17, 2019) (same, with respect to using "an experienced" private mediator).

As detailed above, the material terms of the Settlement Agreement were reached after extensive discovery and a full day of arms'-length negotiations guided by Ms. Sperber. SA ¶¶ 10, 11. The mediation and subsequent negotiations resulting in a unique hybrid common fund-claims made resolution, were undoubtedly hard fought and absent of any collusion. This factor weighs in favor of preliminary approval.

### 4.     The Settlement Treats Settlement Class Members Equitably Relative to Each Other

"A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)). In evaluating whether the proposal is fair and reasonable and treats class members equitably relative to each other, "[t]he court should particularly evaluate 'whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.'" *Robles v. Comtrak Logistics, Inc.*, No.

15-cv-2228, 2022 WL 17672639, at *10 (W.D. Tenn. Dec. 14, 2022) (quoting Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee's note to 2018 amendment).

Here, the Settlement provides for a Notice plan that is designed to reach as many Settlement Class Members as possible and provides Settlement Class Members with direct mail notice of the Settlement. *See, e.g.,* SA, ¶104. It also informs Settlement Class Members of their right to object to, or opt out of, the Settlement. *Id.* Every Settlement Class Member may choose to enroll in Medical Monitoring through CyEx, and every Settlement Class member who can provide documentary evidence of any out-of-expenses fairly traceable to the Data Incident may request reimbursement for those expenses up to $5,500, subject to the $1,750,000 Total Class Fund cap. *Id.*, ¶¶ 90-92. With respect to the SSN Class, those Class Members may elect to receive the above benefits in addition to an equal *pro rata* cash payment. *Id.* ¶ 97. Thus, the Settlement ensures that all Settlement Class Members are treated equitably in relation to each other and the harm the Data Incident has purportedly caused them. This factor weighs in favor of preliminary approval.

### 5. No Risk of Fraud or Collusion Exists

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Green v. Platinum Restaurants Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *4 (W.D. Ky. Apr. 27, 2022) (quoting *Thacker v. Chesapeake Appalachia*, L.L.C., 695 F. Supp. 2d 521 (E.D. Ky. 2010)). Furthermore, "the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Ditsworth v. P & Z Carolina Pizza*, No. 1:20-CV-00084, 2021 WL 2941985, at *3 (W.D. Ky July 13, 2021) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007)). Here, no fraud or collusion existed in the Parties' settlement

negotiations, which were facilitated by Ms. Sperber. This factor likewise weighs in favor of preliminary approval.

### 6. The Complexity, Expense, and Duration of Litigation

As courts have recognized, data breach litigation is inherently complex. *In re Wawa, Inc. Data Security Litig.*, No. 19-6019, 2024 WL 1557366, at *20 (E.D. Pa. April 9, 2024) ("Data breach litigation is inherently complex."); *Beasley v. TTEC Servs. Corp.*, No. 22-cv-00097 & 22-cv-00347, 2024 WL 710411, at *5 (D. Colo. Feb. 21, 2024); *Corra v. ACTS Ret. Servs., Inc.*, No. 22-2917, 2024 WL 22075, at *14 (E.D. Pa. Jan. 2, 2024). "Data breach litigation is evolving; there is no guarantee of the ultimate result." *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021); *see also Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). These cases often require significant knowledge of technology as well as testimony from costly expert witnesses. Joint Decl. ¶ 18. Finally, these cases are made even more complex because courts still struggle with how to analyze these claims and often come to inconsistent conclusions. *Id*. The complexity and expense required to engage in prolonged data breach litigation weighs in favor of preliminary approval.

### 7. The Extent of Discovery Completed

Courts may also consider the stage of the litigation and amount of discovery exchanged. Relevant here, by the time the Parties agreed to attempt mediating this Action, they had exchanged extensive written discovery, each of the Plaintiffs participated in a half-day, in-person deposition, and multiple defense witnesses had been deposed, with others scheduled had the case not resolved at mediation. The Parties ultimately agreed to attempt resolution without even more expensive and prolonged discovery.

16

Class Counsel believe the documents and information exchanged during this time and leading up to mediation were adequate to grasp the relative positions of the Parties, including both the strengths and possible weaknesses of the Action. Joint Decl. ¶ 5. Thus, this factor weighs in favor of preliminary approval.

### 8. Opinion of Class Counsel and Class Representatives

"'The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *Green*, 2022 WL 1240432, at *5 (quoting *UAW v. Ford Motor Co.*, No. 07-cv-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)). As previously discussed, Class Counsel have extensive experience with class actions of this nature and strongly support the proposed Settlement Agreement. *See* Decl. ¶ 10 By their review and consent to the terms of the Settlement Agreement, the proposed Class Representatives are of the same opinion.

### 9. Reaction of Absent Settlement Class Members

The reaction of absent Settlement Class Members will be an important consideration for the Court in determining whether to grant Final Approval. Nevertheless, this factor is inapplicable at the Preliminary Approval stage because the Court has not yet ordered Kroll to provide Settlement Class Members with Notice of the Settlement. Therefore, this factor does not weigh for or against Preliminary Approval.

### 10. Public Interest

"Courts have held that there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Humphrey v. Stored Value Cards*, No. 1:18-cv-01050, 2021 WL 110786, at *6 (N.D. Ohio Jan. 12, 2021); *Green*, 2022 WL 1240432, at *5; *Ditsworth*, 2021 WL 2941985, at *4 (W.D. Ky. July 13, 2021) ("Class counsel took on a [ ] case

17

that an individual class member would almost certainly never file on [his or her] own. The Settlement Class, moreover, obtained recovery on a class-wide basis for an alleged injury that, but for this litigation, would almost certainly have gone uncompensated.'") (quoting *Lonardo v. Travelers Indem. Co*., 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010)). Thus, the strong public interest in favor of settlement weighs in favor of preliminary approval.

### B.     The Court Will Be Able to Certify the Class for the Purpose of Settlement

When granting preliminary approval to a class settlement agreement, the Court must likewise conditionally certify the proposed class pursuant to the requirements of Rule 23 for the purposes of the settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements. Fed. R. Civ. P. 23(a). Because certification is sought under Rule 23(b)(3), Plaintiffs must also demonstrate that common questions of law or fact predominate over individual issues and that a class action is the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615–16. District courts have broad discretion to determine whether certification is appropriate. *See In re Whirlpool Corp*, 722 F.3d at 850. For the reasons outlined below, class certification for the purpose of settlement is warranted.

### 1.     The Settlement Class is Sufficiently Numerous

Class certification requires that the proposed class be so numerous that joinder is impractical. Fed. R. Civ. P. 23(a)(1). *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008) ("In most cases, a class in excess of forty members will do."). When analyzing numerosity, a district court uses its common sense. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012). "While no strict numerical test exists, 'substantial' numbers of affected

consumers are sufficient to satisfy this requirement." *Id.* (internal citations omitted). Here, the size of the Total Class is approximately 460,000 individuals, which easily satisfies this requirement.

### 2. Common Questions of Law and Fact Are Present

The second prerequisite to certification is that there exist questions of law or fact common to the class. Rule 23(a)(2). The Class must have at least one common question of law or fact, and resolution of those questions must advance the litigation. Fed. R. Civ. P. 23(a)(2); *Alkire v. Irving*, 330 F.3d 802, 821 (6th Cir. 2003) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). "Even a single common question will do." *Dukes*, 564 U.S. at 359 (cleaned up). Courts have previously addressed this requirement in the context of cybersecurity incident class actions and found it readily satisfied. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 308 (N.D. Cal. Aug. 15, 2018) (noting that the complaint contains a common contention capable of class-wide resolution).

The commonality requirement is also readily satisfied, as Plaintiffs and the Settlement Class Members all have common questions of law and fact that arise out of the same event—the Data Incident. Plaintiffs' and the Settlement Class Members' claims derive from the same Data Incident and allege the same wrongdoing—Defendant's alleged failure to implement reasonable and industry standard cybersecurity safeguards. Moreover, the claims present the same legal questions, including whether Defendant owed Plaintiffs and the Class a duty of care to implement reasonable cybersecurity measures and whether Defendant breached that duty here.

As in other cybersecurity incident cases, these common issues all center on Defendant's conduct, or other facts and law applicable to all Class Members, thus satisfying the commonality requirement. *See, e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored

in Countrywide's databases at the time of the data breach"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1054 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching class wide resolution."). Thus, common questions of both law and fact exist.

### 3. Plaintiffs' Claims and Defenses are Typical of the Settlement Class

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys*, 75 F.3d at 1082 (quotation marks and citation omitted). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* "[F]or the district court to conclude that the typicality requirement is satisfied, "a representative's claims need not always involve the same facts or law, provided there is a common element of fact or law." *Gaynor* [*v. Miller*, Nos. 3:15-cv-232-TAV-DCP], 2018 WL 3751606, at *9 (E.D. Tenn. Aug. 6, 2018).

Here, the typicality requirement is satisfied as Plaintiffs' claims are typical of those of the other Settlement Class Members because they arise from the same Data Incident and are based on the same legal theory. Because there is a "strong similarity of legal theories" between Plaintiffs' claims and the claims of the Settlement Class Members, the typicality requirement is satisfied.

### 4. Adequacy

Class representatives class counsel must furthermore fairly and adequately represent the Class. Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has "'articulated two criteria for determining adequacy of representation: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the

20

interests of the class through qualified counsel.'" *Ware*, 2020 WL 2441415, at *9 (E.D. Ky. May 12, 2020) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)). Both criteria are met here. First, Plaintiffs have common interests with the proposed Class Members in that they were all a part of the same Data Incident, all received notification letters from Defendant, and present the same questions of law and fact. Moreover, Plaintiffs have diligently prosecuted this action on behalf of the Class and there is no evidence of any collusion among the Parties, nor could there be in this case. Joint Decl. ¶ 17; *Peck*, 2019 WL 3219150, at *4 (adequacy satisfied where "[t]he named plaintiff in this action is a member of the class, he suffered the same injury as the unnamed class members, and he possesses the same interest in receiving his past overtime compensation."). Thus, Plaintiff has and will continue to adequately represent the Class subject to the Court's decision to appoint her as Class Representative.

Second, Class Counsel has adequately represented the Class. Rule 23(g) sets forth several criteria for determining the adequacy of Class Counsel. Under Rule 23(g), courts consider (1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources that counsel will commit to representing the class.

Here, Class Counsel has investigated this matter thoroughly, including by researching the factual background and potential claims and defenses. Joint Decl. ¶ 4. Class Counsel has significant experience in consumer class litigation and specifically has led or been heavily involved in numerous data breach class actions around the country. *Id* ¶ 10. Class Counsel's significant experience have afforded them and their team deep knowledge of the claims and defense common

in data breach litigation. *Id*. And Class Counsel have ample resources to prosecute this action and never relies on outside funding. *Id*. Thus, Class Counsel adequately represent the Class.

### 5. The Requirements of Rule 23(b)(3) Are Met

After satisfying Rule 23(a), Plaintiffs must also satisfy one of the three requirements of Rule 23(b) for a court to certify a class. *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013). Plaintiffs seek certification under Fed. R. Civ. P 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. "A plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. This requirement considers "the difficulties likely to be encountered in the management of a class action" and issues with individual litigation. *Id.*; *see also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action[.]"). The requirements are easily met here.

### 6. Common Issues Predominate

"The 'predominance' inquiry requires the Court "to assess the legal or factual questions that qualify each class member's case as a genuine controversy . . . and assess whether those questions are subject to generalized proof, and thus applicable to the class as a whole.'" *Ware*, 2020 WL 2441415, at *9 (quoting *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017)). Predominance is met if a single factual or legal question is "at the heart of the litigation." *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Predominance is ordinarily satisfied, for settlement purposes, when the claims

arise out of the defendant's common conduct. *See e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 299–300 (3d Cir. 2011) ("[T]he focus is on whether the defendant's conduct was common as to all of the class members.").

In this case, common issues readily predominate because the central liability question for Plaintiffs and Class Members is whether Defendant failed to safeguard personal information. *See Beattie*, 511 F.3d at 564. Several common questions include, *inter alia*, whether Defendant has a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and Class Members; whether they breached that duty; whether Plaintiffs and Class Members' Private Information was compromised in the Data Breach; whether Defendant unreasonably delayed in notifying Plaintiffs and Class Members of the material facts of the Data Breach; and whether Defendant violated the common law and statutory violations alleged in the Complaints.

### 7.     A Class Action is the Superior Means of Resolution

Finally, a class action is superior to other methods available to resolve the claims of the proposed Class fairly, adequately, and efficiently. As the Sixth Circuit has explained, "'[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" *Hicks v. State Farm Fire & Cas. Co.*, No. 14-CV-00053-HRW, 2019 WL 846044, at *6 (E.D. Ky. Feb. 21, 2019), *aff'd and remanded*, No. 19-5719, 2020 WL 3888156 (6th Cir. July 10, 2020) (citing *Young*, 693 F.3d at 545 (quoting *Amchem*, 521 U.S. at 617)). Where, as here, "it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Id.* (internal quotation marks and citations omitted).

The resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. Indeed, absent class treatment, hundreds of thousands of Class Members will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the relatively small amount of damages likely to be recovered by each Class Member relative to the resources required to prosecute such an action. *See Amchem*, 521 at 617 (stating that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Additionally, the proposed Settlement will give the Parties the benefit of finality, and because this case has now been settled pending Court approval, the Court need not be concerned with issues of manageability relating to trial. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating hundreds of thousands of individual data breach cases arising out of the *same* Data Breach.

As the superiority requirement is satisfied, along with all other requirements of Rule 23, the Court should certify the Class for the purposes of settlement.

## V.     THE PROPOSED NOTICE PROGRAM IS REASONABLE AND PROVIDES AMPLE DUE PROCESS

Lastly, the proposed Notice Program provides adequate due process to absent class members. Rule 23(e) provides "notice of the proposed . . . compromise shall be given to all members of the class in such a manner as the court directs." Due process requires provision of the

best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. *See* Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded." Fed. R. Civ. P. 23(c)(2)(B). The Notice Program provided for by the Settlement Agreement satisfies the requirements of Rule 23 and due process and is designed to be the best practicable and to meet all the criteria set forth by the *Manual for Complex Litigation*.

The Notice Program detailed in the Declaration of Patrick M. Passarella of Kroll Settlement Administration LLC in Connection with Preliminary Approval Settlement attached as Exhibit 3 provides absent Settlement Class Members mailed Postcard Notices, a Settlement Website dedicated to informing Settlement Class Members and allowing them to make Claims, and requires Kroll to take additional steps to reach absent Settlement Class Members for whom it receives an undeliverable response. The Notices, which are attached to the Settlement Agreement as Exhibits 1-3, use plain language and are easy to understand. Should Settlement Class Members have any questions, the Settlement Agreement requires Kroll to establish a toll-free telephone number to answer their questions. SA ¶ 104. Furthermore, for those Settlement Class Members who do not wish to participate, the Settlement Agreement provides them ample instructions and opportunity to either opt out or object. *Id.* ¶¶ 87–94. And finally, the Notice program details the provisions for payment of Attorneys' Fees, Costs and Service Award, and provides contact information for Settlement Class Counsel. In light of the foregoing, the Notice Program has been designed to give

the best notice practicable, is tailored to reach the Settlement Class Members, and ensures their due process rights are amply protected.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (1) granting Preliminary Approval to the Settlement; (2) certifying the Total Class and SSN Class for the purposes of the Settlement pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3); (3) ordering the Settlement Administrator to direct and issue Notice to the Settlement Class Members under the terms of the Settlement Agreement; (4) appointing Plaintiffs as Class Representatives for the purpose of the Settlement; and (5) scheduling a Final Approval Hearing wherein the Court will determine whether final approval the Settlement as fair, reasonable, and adequate.


Dated: December 22, 2025                       Respectfully Submitted,

By: */s/ Bryan L. Bleichner*
Bryan L. Bleichner (admitted *pro hac vice*)
Christopher P. Renz (admitted *pro hac vice*)
Philip J. Krzeski (admitted *pro hac vice*)
**CHESTNUT CAMBRONNE PA**
100 Washington Ave S, Ste 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Fax: (612) 336-2940
*bbleichner@chestnutcambronne.com*
*crenz@chestnutcambronne.com*
*pkrzeski@chestnutcambronne.com*

Danielle L. Perry (admitted *pro hac vice*)
Gary E. Mason (admitted *pro hac vice*)
Lisa A. White (TN BPR # 026658)
**MASON LLP**
5335 Wisconsin Ave NW, Ste 640
Washington, DC 20015
Telephone: (202) 429-2290

26

*dperry@masonllp.com*
*gmason@masonllp.com*
*lwhite@masonllp.com*

*Class Counsel for Plaintiffs and Putative*
*Settlement Class Members*